UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JONATHAN ALAJEMBA, | ) |
| | ) |
| Plaintiff, | ) No. 3:11-0472 |
| | ) Judge Brown |
| v. | ) |
| | ) |
| RUTHERFORD COUNTY ADULT | ) |
| DETENTION CENTER, et al., | ) |
| | ) |
| Defendants. | ) |

## M E M O R A N D U M

Pending before the court is defendant John D. Rudd, M.D. d/b/a Rudd Medical Management's ("defendant") motion for summary judgment (Docket No. 32), to which the plaintiff has not responded in opposition. For the reasons discussed herein, the defendant's motion will be granted.

### FACTUAL BACKGROUND

The plaintiff, Jonathan Alajemba, is an inmate at the Rutherford County Adult Detention Center in Murfreesboro, Tennessee.[1] (Docket No. 1). The defendant is a physician whose practice includes providing medical services to inmates at the Rutherford County Adult Detention Center (RCADC) and supervising the medical staff at the RCADC. (Docket No. 35, Aff. of J. Rudd ¶ 3). Dr. Rudd and the medical staff at the RCADC provide care to inmates under a contract with the

---

[1] The plaintiff failed to satisfy his procedural burden pursuant to Local Rule 56.01(c), which requires a specific response to each fact set forth in the defendant's statement of undisputed material facts that accompanied its motion to dismiss. According to Local Rule 56.01(g), such failure to respond "shall indicate that the asserted facts are not disputed for purposes of summary judgment." Noting the plaintiff's *pro se* status, however, the court will not hold him to these rigid technical standards. The facts above are drawn from the defendant's statement of undisputed facts (Docket No. 34), the defendant's affidavit (Docket No. 35), and the plaintiff's complaint (Docket No. 1), as noted.

1

Sheriff of Rutherford County. (*Id.*) Neither Dr. Rudd nor any member of the medical staff is employed by the Sheriff or employed by Rutherford County. (*Id.*) The medical staff is employed by Dr. Rudd and works under his direction and supervision. (*Id.*) The contract between Dr. Rudd and Rutherford County was in effect at all times the plaintiff received the care at issue in this action. (*Id.*)

According to the complaint, the plaintiff was arrested for first degree murder in December 2008. (Docket No. 1 at pp. 5-6). He was incarcerated at the RCADC, where he was placed in segregation due to the seriousness of his offense. (*Id.*) According to the defendant, upon incarceration the plaintiff reported no history of mental illness or no current medications to treat mental illness. (Docket No. 35, Affidavit of J. Rudd ¶ 6). In January 2009, he was moved briefly to general population housing but was returned to segregation in February 2009 for the plaintiff's protection due to suspected gang-related threats against the plaintiff. (Docket No. 1 at pp. 5-6). The plaintiff has been held in segregation for a period of twenty-eight (28) months, despite his grievances asking to be returned to the general inmate population. (*Id.*)

The plaintiff states that he suffers from bi-polar disorder and schizophrenia, and he alleges that the continued isolation of segregation has exacerbated his existing mental illnesses. (*Id.*) During his stay in segregation, the plaintiff has attempted to harm himself. (*Id.*) Specifically, on April 22, 2011, at 9:50 p.m., the plaintiff had scratches and superficial wounds on his left forearm where he had previously cut himself with a staple from legal paperwork. (Docket No. 35, Aff. ¶ 6). No bleeding, drainage, selling, or signs or symptoms of infection were present. (*Id.*) Bandages and ointment were applied. (*Id.*) The plaintiff was placed in a booking room cell which has video monitoring equipment and placed on suicide watch. (*Id.*)

On two separate occasions during the plaintiff's stay in segregation, he was subjected to punishment called "dry cell." (*Id*.) Documents submitted by the plaintiff show that, on one of these occasions, the punishment was in response to the plaintiff having intentionally flooded his cell. (*Id*.) During the "dry cell" punishment period, correctional officers removed everything from the plaintiff's cell, including his mattress, bedding, and blanket. (*Id*.) The plaintiff's items were returned between the hours of 10:00 p.m. and 6:00 a.m. only. (*Id*.)

On April 23, 2011, at 12:40 p.m., the plaintiff was seen by RCADC medical staff for a suicide watch follow up. (Docket No. 35, Aff. of J. Rudd ¶ 7). The plaintiff stated that he was not doing well and was hearing voices. (*Id*.) The plaintiff continued to be monitored and was kept on suicide watch. (*Id*.)

On April 23, 2011, at 5:40 p.m., the plaintiff was seen by RCADC medical staff. (*Id*. ¶ 8). The plaintiff again complained of hearing voices. (*Id*.) Dr. Rudd gave the medical staff a verbal order for Haldol 10 mg. (*Id*.) The plaintiff refused to take an injection of Haldol as he claimed to be allergic to the drug. (*Id*. ¶ 9). On April 23, 2011, at 6:27 p.m., the defendant accommodated the plaintiff's concern of taking Haldol via an injection, and instead offered to provide the Haldol orally, to which the plaintiff agreed. (*Id*.) Later, the plaintiff refused to take Haldol orally and stated that he would not take any medication. (*Id*. ¶¶ 10, 11, and 13).

On April 23, 2011, at 11:00 p.m., the plaintiff requested to speak with someone from the crisis response team. (*Id*. ¶ 10). On April 24, 2011, at 2:24 a.m., Albert Edmond from the crisis response team evaluated the plaintiff. (*Id*.) Mr. Edmond recommended a transfer to StoneCrest Medical Center for further evaluation (*Id*.) The plaintiff alleges that he was not transferred (Docket No. 1), but Dr. Rudd testified by affidavit that the plaintiff was transferred to StoneCrest Medical

3

Center for evaluation and that the physicians at StoneCrest determined that an inpatient psychiatric evaluation would be appropriate. (Docket No. 35, Aff. of J. Rudd ¶ 10). However, a bed was not available at the Middle Tennessee Mental Health Institute (MTMHI); consequently, the plaintiff was returned to the RCADC on April 24, 2011, at 6:20 a.m. (*Id.*)

According to the defendant's affidavit, at 6:20 a.m. on April 24, 2011, the plaintiff returned from StoneCrest with a "Psych Clearance" for inpatient transfer. (Docket No. 35, Aff. of J. Rudd ¶ 10). The plaintiff was transferred to MTMHI on April 25, 2011, when a bed became available. (*Id.* ¶ 13). The plaintiff alleges that he should have been taken to MTMHI sooner. (Docket No. 1). The plaintiff was returned to the RCADC with a diagnosis of malingering and poor impulse control. (*Id.* ¶ 13).

The plaintiff was seen by the RCADC medical staff at 2:25 p.m. on April 25, 2011, after returning to RCADC from MTMHI. (*Id.* ¶ 14). It was noted, at that time, that the plaintiff wished to talk to the crisis team again as he wished to return to MTMHI. (*Id.*) It was his hope that there would be "another intake person" and he would be admitted upon a second presentation, even though he had just been denied admission due to a diagnosis of malingering. (*Id.*)

On April 25, 2011, at 3:11 p.m., the plaintiff was seen by the RCADC medical staff, and he remained on suicide watch. (*Id.* ¶ 15).

On April 26, 2011, at 12:47 p.m., the plaintiff was seen by the RCADC medical staff. (*Id.* ¶ 16). He did not have any complaints at that time, but he asked to be cleared from suicide watch. (*Id.*) He denied thoughts of hurting himself or other people. (*Id.*) He was seen by a nurse practitioner at 3:20 p.m. (*Id.*) The plaintiff was clam, cooperative, and denied any suicidal thoughts. (*Id.*) He was released from suicide watch. (*Id.*)

4

On May 2, 2011, the plaintiff was seen by the RCADC medical staff and denied suicidal ideations, depression, anxiety, homicidal ideations or hallucinations. (*Id.* ¶ 17). He was sent again on May 27, 2011, and on July 14, 2011, and reported no problems. (*Id.* ¶¶ 18, 19).

## ANALYSIS

**I.    Standard of Review**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must prove the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.' " *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)).

If the non-moving party fails to make a sufficient showing on an essential element of the case with respect to which he has the burden, however, the moving party is entitled to summary judgment

5

as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999). To preclude summary judgment, the non-moving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the non-moving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the non-moving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249-52.

## II. The Defendant's Summary Judgment Motion

The plaintiff brings this *pro se* action under 42 U.S.C. § 1983, alleging that his civil rights were violated by Dr. Rudd and the medical staff at the RCADC by demonstrating deliberate indifference to the plaintiff's mental health needs. (Docket No. 1, Compl. ¶ IV). The plaintiff alleges that he was in need of medication and inpatient hospitalization for treatment of his mental illness. (*Id.*) The plaintiff also alleges that housing him in a segregation pod caused him to suffer physically, emotionally, and mentally. (*Id.*) The plaintiff further alleges that he was a victim of negligence and medical malpractice committed by Dr. Rudd and the medical staff at the RCADC in failing to admit the plaintiff to a mental health hospital. (*Id.*)

The defendant contends that he is entitled to summary judgment on all of the claims asserted in the plaintiff's complaint. (Docket Nos. 32 and 33). First, the defendant contends that the plaintiff's claims should be dismissed pursuant to the United States Supreme Court's recent decision

6

in *Minecci v. Pollard*, __ U.S. __, 132 S. Ct. 617 (Jan. 10, 2012). Next, the defendant contends that the events alleged by the plaintiff to have taken place during his incarceration at the RCADC do not rise as a matter of law to the level of conduct necessary to support a claim of deliberate indifference. Finally, the defendant contends that the plaintiff's medical practice claims must be dismissed because the plaintiff failed to comply with applicable state statutes. (Docket No. 33 at p. 3).

First, the defendant alleges that the plaintiff's claims should be dismissed pursuant to the United States Supreme Court's recent decision in *Minecci*, in which the Supreme Court held that an federal prisoner seeking damages did not have an Eighth Amendment claim based on inadequate medical care against employees of a privately-operated federal prison. 132 S. Ct. 617, 622-26. However, the plaintiff in the *Minecci* case asserted *Bivens* claims against employees of a federal prison, unlike the instant plaintiff, who alleges Section 1983 claims against Dr. Rudd and the medical management staff who are under contract with a county detention center. It is unclear at this early date whether the *Minecci* holding will be extended to prisoners such as the plaintiff who assert Eighth Amendment claims against private physicians under contract to provide medical services to county and state inmates.

The defendant alternatively argues that the alleged conduct does not establish that the defendant was deliberately indifferent to the serious medical needs of the plaintiff. (Docket No. 33 at p. 6). The plaintiff asserts claims under 42 U.S.C. § 1983 pursuant to the Eighth Amendment of the United States Constitution. The plaintiff, in his complaint, asserts three specific claims of deliberate indifference: (1) failure to provide a different medication; (2) failure to send him to another hospital; and (3) housing him in segregation which led him to suffer physically, emotionally, and mentally. (Docket No. 1, Compl. ¶ IV).

7

The Eighth Amendment to the United States Constitution prohibits subjecting prisoners to "unnecessary and wanton infliction of pain," which includes the "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). An Eighth Amendment claim has both objective and subjective components. The objective component requires proof of "a 'sufficiently serious' medical need." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994)). The subjective component requires proof "that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.* (internal quotation marks omitted). In other words, to prevail on his Eight Amendment claim, plaintiff Alajemba needs to show more than that he disagrees with the defendant's medical judgment or even that the defendant acted negligently in his treatment of the plaintiff's condition. *See Estelle*, 429 U.S. at 106 ("[T]hat a [medical professional] has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment.").

### A. Alleged Failure To Provide A Different Medication

The plaintiff first alleges that the defendant should have treated the plaintiff with a different medication. (Docket No. 1, Compl. ¶ IV). Specifically, he alleges that the defendant only offered Haldol, a drug to which the plaintiff claims previously to have had a strong allergic reaction. (*Id.*) The medical records submitted by the defendant, and unopposed by the plaintiff, show that, on April 23, 2011, the defendant accommodated the plaintiff's concern of taking Haldol via an injection and instead offered to provide the Haldol orally, to which the plaintiff agreed. Later, however, the unopposed records show that the plaintiff refused to continue taking Haldol orally and stated that

he would not take any medication.

The plaintiff's allegation that the defendant should have been prescribed a different medication is simply a difference of opinion as to treatment. "A prisoner's difference of opinion regarding diagnosis or treatment also does not rise to the level of an Eighth Amendment violation." *Keel v. Ray*, 2011 WL 3501688, *2 (M.D. Tenn. 2011)(citing *Estelle v. Gamble,* 429 U.S. 97, 107 (1976)). If a plaintiff receives medical attention, a court will not second guess the judgment of the medical professionals providing such treatment. *See Estelle,* 429 U.S. at 106-07.

The plaintiff here has produced no evidence that the defendant's decision to prescribe Haldol via an injection or orally was medically inappropriate. Likewise, the plaintiff has produced no evidence that the defendant's actions or statements constituted deliberate indifference to the plaintiff's condition. Consequently, the plaintiff has failed to meet his burden of proof that a genuine issue of material fact exists to defeat the defendant's motion for summary judgment. Accordingly, the defendant is entitled to summary judgment as a matter of law on this claim.

### B. Alleged Failure To Send Plaintiff To Another Hospital

The plaintiff next alleges that he should have been sent to another hospital after StoneCrest and the Mental Tennessee Mental Health Institute ("MTMHI") denied him admission. After receiving an inpatient psychiatric evaluation at MTMHI, the plaintiff was returned to RCADC with a diagnosis of malingering. After returning to RCADC, records show that the plaintiff was seen by RCADC medical staff who noted the plaintiff's stated desire to return to MTMHI and his hope that there would be "another intake person" who would admit the plaintiff upon a second presentation. However, "[a] Plaintiff is not constitutionally entitled to a particular course of treatment on his own assessment of its necessity." *Hodges v. R.M.S.I. Med. Dept' Nurses*, 2009 WL 981979, *3 (M.D.

9

Tenn. April 13, 2009)(citing *Estelle,* 429 U.S. 97, 107).

The plaintiff also alleges that he initially should have been sent to the hospital sooner. Specifically, the plaintiff alleges in his complaint that he had to wait two days before being sent to a hospital for a mental evaluation. However, the medical records submitted by the defendant in support of his motion for summary judgment, unopposed by the plaintiff, do not support the plaintiff's allegations. Instead, the records show that the plaintiff was given a clearance for inpatient transfer, transferred to MTMHI as soon as a bed was available, and returned to RCADC all within approximately thirty-two hours. The plaintiff has adduced no evidence of a deliberate intent by the defendant to delay the plaintiff's transfer to MTMHI.

Furthermore, the plaintiff has failed to provide any proof that the alleged delay caused him any injury. In his complaint, the plaintiff states that the delay caused him to "hear voices" and attempt to harm himself. However, the only evidence before the court shows that the plaintiff was carefully and continually monitored by the medical staff between April 23 and 25, 2011, the time period during which the plaintiff allegedly attempted to harm himself. On April 26, 2011, when the plaintiff was seen by the RCADC medical staff, he did not have any complaints at that time and asked to be cleared from suicide watch. He denied thoughts of hurting himself or other people. Later that same day, he was checked by a nurse practitioner who reported that the plaintiff was clam, cooperative**,** and denied any suicidal thoughts. At that point, the plaintiff was released from suicide watch but was seen again by medical staff within a week, at which time the plaintiff denied suicidal ideations, depression, anxiety, homicidal ideations or hallucinations. When he was seen again on May 27, 2011, and on July 14, 2011, the plaintiff reported no problems.

The Sixth Circuit Court of Appeals has held that "'[a]n inmate who complains that delay

in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed.'" *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001) (quoting *Hill v. Dekalb Reg. Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994)). The plaintiff simply has failed to place any verifying medical evidence in the record that the alleged delay in transfer caused him any detrimental effect.

Again, the plaintiff's allegation that he should have been given another chance for admission to a mental hospital is merely his opinion, and the court will not second-guess the mental health care practitioners who evaluated and treated the plaintiff. As noted earlier, "[a] prisoner's difference of opinion regarding diagnosis or treatment also does not rise to the level of an Eighth Amendment violation." *Keel,* at *2. *See also Estelle* at 107. Thus, the defendant is entitled to summary judgment of this claim.

### C. Allegation That Being Housed In Segregation Caused Physical, Emotional And Mental Suffering

The plaintiff alleges that he suffered physically, emotionally and mentally from being placed in segregation for a period of twenty-eight (28) months. Specifically, the plaintiff, in reference to being placed in segregation, alleged, ". . . I suffered physical[ ] from cutting myself and smashing my head against concrete." (Docket No. 1, Compl. ¶ IV).

"No civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Here, there is no evidence before the court that the plaintiff suffered physical injuries caused by alleged wrongs committed by the defendant. Instead, the plaintiff's alleged physical injuries are self-inflicted. Importantly, there is no evidence that the defendant was

11

responsible for placing the plaintiff in segregation. Based on the plaintiff's lack of physical injury, the plaintiff is not entitled to any damages for alleged mental and emotional injuries from being housed in segregation.

Moreover, continued placement in segregation for the purpose of suicide watch was necessary for the plaintiff's mental and physical well-being and continued only until his mental condition was stable for a period of time. The plaintiff's objection to being placed on suicide watch is merely another difference of opinion about his medical treatment, which cannot sustain a cause of action for deliberate indifference as a matter of law. *See Keel*, 2011 WL 3501688, at *2; *see also Estelle,* 429 U.S. at 107. Consequently, no genuine issue of material fact exists for trial, and the defendant is entitled to summary judgment in his favor on this claim.

### D. State tort claims

The plaintiff also alleges state law claims of negligence and medical malpractice against the defendant. Title 28 U.S.C. § 1367(a) provides that:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . .

However, the district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it ha[d] original

12

jurisdiction . . . ." *Id.* at § (c)(3).

For the reasons explained above, the plaintiff's federal claims over which the court has original jurisdiction must be dismissed. The court declines to exercise supplemental jurisdiction to hear the plaintiff's remaining state tort claims. As such, these claims will be dismissed without prejudice to be filed, if the plaintiff so chooses, in state court.[2]

## CONCLUSION

Based on the foregoing, the defendant's motion for summary judgment (Docket No. 32) will be granted. Accordingly, the plaintiff's federal claims against the defendant will be dismissed with prejudice. The court declines to exercise supplemental jurisdiction over the plaintiff's remaining state law claims. Those claims will be dismissed without prejudice.

An appropriate order will enter.

/S/ Joe B. Brown

Joe B. Brown
United States Magistrate Judge

---

[2] The court makes no representations regarding any applicable statute of limitations for the plaintiff's state law claims.